## JANE STEBBINS and another v. MATTHIAS HOWELL.

Where defendant by fraudulent representation procured plaintiffs to release their mortgage lien upon certain premises, and before discovery of the fraud the title to said premises had been so conveyed that the lien could not be restored, the plaintiffs will be entitled to judgment against the defendant for the amount of the lien so released.

THE plaintiffs held a mortgage given in February, 1856, for $5,500, on two building lots in the city of New York. In March, 1857, certain parties who had become owners in fee of the mortgaged premises contracted to sell the lots to the defendant, Howell, he agreeing to erect a dwelling-house on each lot, of a description given in such agreement and to complete the same by the 1st day of March, 1858. Howell was entitled to a deed of the premises when the houses were inclosed on paying the purchase-money less the plaintiffs' mortgage; and the deed was to contain a clause binding and subjecting Howell to the payment of the incumbrance. Howell commenced immediately to build the houses under the agreement. In August 1857, while the houses were in process of construction, and had become inclosed, Howell, by representing to the plaintiffs that he was the owner of these lots, and that he desired to have them release the mortgage lien on one of these lots and loan him the further sum of $1,000 on the remaining lot, he procured them to release the said mortgage lien on one of the lots, and after obtaining said release and procuring the same to be recorded, he refused to take the loan and give the security promised. The representations of the said Howell in respect to his ownership of the said lots was false, and he acted in bad faith in procuring the release of the mortgage lien upon said lot. The plaintiffs on discovering the fraud of Howell, commenced their action against him, setting forth in their complaint the above facts, and also, that the said Howell was not the owner in fee of either of said lots, but only the holder of an agreement for the purchase and sale of the same. That the fee in the remaining lot was in one

Browning, subject to the agreement for purchase, held by Howell; the said Browning was made a party defendant. That the interest of Browning in said lot was about $1,600. That plaintiffs had applied to Browning for his consent in writing to have the whole amount due on the mortgage charged upon said lot, the fee of which was in him. But he refused to consent to the same. The plaintiffs, among other things, pray for an injunction against Howell and Browning and each of them, restraining them from conveying, or in any manner incumbering the said lots of ground or any portion thereof. The plaintiffs also prayed that Howell should be directed to restore the said mortgage lien upon said lot; or that he should be desired to pay to the plaintiffs the sum of $2,750 and interest, as the consideration of the release of the mortgage lien, thus fraudulently obtained by him. The prayer for injunction was granted.

At the Special Term of the Supreme Court in the first district, held in June, 1858, the judge found the above facts as to the rights of the plaintiffs, and the fraudulent conduct of the defendant, Howell, and found as a conclusion of law, that the plaintiffs were entitled to payment by the defendant Howell, of the sum of $2,750, being one-half the amount due upon said mortgage, with interest from the 26th September, 1857, and judgment was rendered for the same and for costs against the defendant Howell. Howell appealed to the General Term where the judgment of the Special Term was affirmed, and he now appeals to this court.

*John P. Crosby*, for the respondents.

*Solomon L. Hull*, for the appellant.

WRIGHT, J. The case is this. The plaintiffs held a mortgage, given in February, 1856, for $5,500, on two building lots in the city of New York. In March, 1857, certain parties who had became the owners in fee of the mortgaged premises contracted to sell the lots to the defendant Howell, he agreeing to erect a dwelling-house on each lot, of a definite description, and complete the same by the first of March, 1858. Howell

was to be entitled to a deed of the premises when the houses were inclosed on paying the purchase-money, less the plaintiffs' mortgage; and the deed was to contain a clause subjecting and binding him to the payment of the incumbrance. Howell commenced forthwith to build the houses under the agreement. In August, 1857, while the houses were being built, and were inclosed, by a fraud of Howell or bad faith on his part, the plaintiffs lost the lien of their mortgage on one of the lots, and the other may or may not be ample security for the sum of $5,500. It certainly is not without the building on it. But whether it is or not is of no consequence whatever. Howell paid nothing for the release of the lien of the plaintiffs' mortgage, and never had any right to it, except upon his performing in good faith the contract in pursuance of which the delivery of the release was anticipated. In August, 1857, representing himself to the plaintiffs to be the owner of both lots, when in fact, he had the title to neither, he applied to them to release the mortgage lien on one of the lots, and lend him an additional sum on the remaining lot. It was agreed to release the lien on one lot and loan him the further sum of $1,000 which was afterward extended to $1,500 on the other lot. Of course the lease and the additional loan were intended to be simultaneous transactions; and the agreement for both was manifestly based on the supposition that Howell was the owner of the whole mortgaged premises. Otherwise the release of one-half of the premises from the operation of the mortgage was without any consideration whatever, and the plaintiffs were placed in jeopardy of a loss of one-half their mortgage debt. The agreement was not immediately consummated, and in the meanwhile, under the pretense that he would carry it out, and the plaintiffs relying on his good faith, Howell obtained the release, and afterward persistently declined to perform on his part, although there was no difficulty in his doing so. It turned out that he had but an equitable interest in the lot not released, but was entitled to a deed of the same on the payment of $1,500—the exact amount which the new loan would have extinguished had the agreement been carried

out, and the party holding the fee was ready and willing to execute such conveyance to him on receiving that sum. After procuring the release, however, and having it recorded, he refused to proceed any further in consummating the agreement, and giving as the reason for non-performance on his part, that the money was not forthcoming from the plaintiffs when he wanted it; that the time had gone by for selling the houses on the lots, and he would have to pay the interest and taxes on the lot not released from the lien of the mortgage, which, as between him and the person holding the title, the latter ought to pay.

It seems to me to require but a simple statement of the case to show the correctness of the judgment of the court below. The defendant, Howell, having obtained the release, if not under false pretenses and misrepresentations, or concealment of the truth, yet without any consideration, and without carrying out the arrangement into which he had expressly entered, should be compelled to restore the plaintiffs to their former conditions as to the security. It is no answer whatever to him that, as that part of the mortgaged premises with the building thereon is worth double the sum secured by the plaintiffs' mortgage, no damage could result to them by his surreptitiously obtaining a release of one-half the mortgaged premises. The value of their security is lessened one-half, and to that extent by the defendant's fraud or bad faith they are put in jeopardy of loss. As the release could not be recalled, and that part of the mortgaged premises released was of equal value with what remains subject to the lien, the only equitable mode of restoring the plaintiffs to their original condition as their security, was that adopted.

The judgment should be affirmed.

Concurring, MULLIN, JOHNSON, DAVIES and INGRAHAM, JJ.

HOGEBOOM, J., read for modification. DENIO, Ch. J., did not vote.

Judgment affirmed.

HOGEBOOM, J. On the 17th day of July, 1857, the plaintiffs were the owners of a bond and mortgage made by

Elkanah Isaacs, dated February 25th, 1856, on which there was remaining due the sum of $5,500.

This mortgage was the first lien on two lots in Eleventh street, in the city of New York, numbered 4 and 5 on the diagram on page 12 of the case. The defendant, Howell, erected on each of said lots, houses; and, pursuant to the agreement proved in the case, was entitled to a conveyance of No. 4 from Richard Lawrence, who held the fee; and was entitled to a conveyance of No. 5 from Theodore Browning, on paying $1,500 to said Browning.

The house and lot No. 5 was worth, as the court below found, at least $14,000. The plaintiffs about the 8th of August, 1857, at defendant's (Howell), request, to release the house and lot No. 4 from their mortgage and hold the whole amount thereof against No. 5; and, in addition, to loan thereon the further sum of $1,000 which was afterward agreed should be $1,500 instead of $1,000 ; thus making, if the arrangement was carried out, plaintiffs' mortgages on No. 5, $7,000.

The plaintiffs executed and delivered to defendant, Howell, the release of No. 4 from said mortgage, and thereupon Howell immediately executed and delivered to the Resolute Fire Insurance Company a mortgage upon the house and lot so released to secure the payment of $6,500 loaned by them. At the time of executing and delivering said release, the plaintiffs supposed said Howell held the fee of both No. 4 and No. 5, they never having had any notice to the contrary.

As a matter of fact, the fee of No. 4 was then held by said Lawrence, and the fee of No. 5 was held by said Browning, subject to said Howell's right to receive a conveyance as above mentioned. And at the time of receiving the release, said Howell transferred to plaintiffs a policy of insurance on house and lot No. 5, for $5,000, as security for their mortgage.

According to the findings of fact by the court, the additional loan of $1,500 was never consummated, by reason of the non-performance on the part of said Howell of his agreement, and he refused to take the money.

This led to an investigation of the title by the plaintiffs, and it was ascertained that Howell never had the legal title to the property in question. The plaintiffs then commenced this action, asking a cancellation of the release, a restoration of the lien of the mortgage over both lots (4 and 5) by the removal of the mortgage of the Resolute Fire Insurance Company, or the payment by Howell to the plaintiffs of $2,750, and interest, as the consideration of said release, being the portion of plaintiffs' mortgage which Howell assumed to pay in his purchase from Lawrence of lot No. 4, or that in default thereof the interest of Howell in the Lawrence lot be sold and the proceeds applied to the payment of said sum of $2,750 and interest, and if insufficient then that the Browning lot be sold, and out of the proceeds, the aforesaid deficiency and the amount due Browning be paid, the said sale to be subject to the payment of the remaining $2,750 and interest, due on the plaintiffs' mortgage. The cause was tried at Special Term in the city of New York, and that court gave judgment for $2,750 with interest and costs against the defendant, Howell (without other relief). On appeal by Howell to the General Term, the judgment was affirmed, and, thereupon, the defendant, Howell, appealed to this court.

The object of this suit seems to be to cancel a release executed by the plaintiffs to the defendant Howell, discharging lot No. 4, described in the pleadings, from the operation of a mortgage held by the plaintiffs to the amount of $5,500, and covering lots Nos. 4 and 5, and to restore the lien of said mortgage over both of said lots, or that said Howell pay to the plaintiffs $2,750, one-half of said mortgage, being the amount of said mortgage which said Howell agreed to assume or pay when he contracted to purchase said lot No. 4 from Richard Lawrence, the then owner thereof; and this last branch of the relief sought, to wit, the payment of the said $2,750 and interest, is the relief granted by the court which tried the cause, and whose judgment was affirmed at the General Term.

The ground upon which the plaintiffs founded their claim to this relief appears to be that holding this mortgage upon these two lots, executed by one Isaacs, a former owner thereof, they were applied to by Howell, whom they supposed to be the then owner of these lots, to release one of them (No. 4) from the operation of the mortgage, and to make an additional loan of $1,000, afterward increased to $1,500 on the remaining lot (No. 5), for which, with the dwelling-house erected thereon by Howell, it was claimed to be good security; that the plaintiffs consented to make this loan, and subsequently applied to Howell for the fulfillment of the contract, which he declined to make, and refused to take the money, and the plaintiffs thereupon instituting inquiries as to the state of the title, for the first time ascertained that Howell had not the legal title thereto, but only a contract for the purchase thereof from Browning, the other defendant, to whom there was owing some $1,500 of unpaid purchase-money, which was to be paid before he could be compelled to transfer the title to said lot. The plaintiffs allege that at the time of soliciting said release Howell represented himself as the *owner* of said lots, which Howell denies. The finding of the court upon this subject is "that when said release was delivered by said plaintiffs to said defendants they were ignorant of the fact that the fee of said lot No. 5, was held by said Browning, and had no notice of such fact from Howell, and were led to suppose by his silence, and by other acts, that he was the owner thereof." Immediately on receiving the release of the lot (No. 4) from the mortgage, Howell executed and delivered to the Resolute Insurance Company a mortgage thereon for $6,500, and there seems to be no attempt to dispute the validity or *bona fide* character of this lien, or its right to a preference over one-half of the plaintiffs' mortgage. At the same time, Howell executed and delivered to the plaintiffs a policy of insurance on the house upon the remaining lot (No. 5) for the sum of $5,000. This house and lot (No. 5) are found by the court to be worth at least $14,000, and to be ample security for the loan of $6,500.

The plaintiffs, therefore, claim that the release was obtained from them by fraud, or indirection, or false representations, and without consideration and that they are consequently entitled to the relief prayed for in the complaint. They cannot obtain that branch of the relief which seeks the cancellation of the release and the restoration of the mortgage, at least not to the extent prayed for in the complaint, because they have not made the Resolute Insurance Company a party to this action, nor sought to assail the apparent *bona fide* priority which they have obtained by loaning their money after the execution and probably upon the strength of the release, and they have therefore sought and obtained from the court below the other branch of relief prayed for, to wit, the payment of $2,750, with interest. There is some difficulty in saying that such relief is apposite to the case. We must assume, no doubt, for the court has so found, that the defendant Howell has violated his contract in not accepting the additional sum of $1,500 agreed to be loaned, and yet upon the theory now proposed by the plaintiffs they would have been in a worse situation by just that amount if they had in fact loaned to the defendant that sum. In another particular, according to the finding of the court below, the defendant Howell was in fault, to wit, in procuring the release of the lot in question from the mortgage and confining the lien of the mortgage to the remaining lot upon the faith of Howell's ownership of that property. It would seem, so far as I can understand the testimony, that the plaintiffs were willing to take security upon lot No. 5 to the whole amount of the $5,500 mortgage, and the additional $1,500 which they proposed to loan to the defendant Howell, provided Howell was the owner thereof, which Howell led them to believe, if he did not actually represent that he was.

It turned out that he was not the owner, or, if the equitable owner, that there was an equitable lien in favor of Browning which intervened between one half in amount of this mortgage ($2,750) and the remaining half and said sum of $1,500, and the question is to what relief, if any, are the plaintiffs entitled. They have lost their remedy against

the property released, or at least it is to be postponed to the mortgage of the Resolute Insurance Company, and perhaps this fact, more than any other, gives the clue to the relief to which the plaintiffs are entitled. They are entitled to preserve the lien of their mortgage intact against the lot not released (No. 5), that is, if it has not been impaired by the release of lot No. 4, which is a question as to the extent of contribution between the plaintiffs and Browning, which does not appear to be raised in the case, at least not on this appeal. They are entitled to have the lien of their mortgage restored upon lot No. 4 except as against the mortgage of the Resolute Insurance Company, and to have such interest as Howell had in the premises after the lien of such mortgage, sold on a foreclosure of their own mortgage, and if, on the foreclosure of mortgage of the plaintiffs, the mortgaged premises shall prove insufficient to pay the mortgage, I do not see why they would not be entitled to a decree against Howell for the deficiency, on the ground that this was the legitimate and accurate measure of the damages they had sustained by the act of Howell in improperly procuring the release in question. And this seems to me the extent of the relief to which the plaintiffs are entitled. This is not an action for the foreclosure of the plaintiffs' mortgage. Indeed, the terms of it are not set forth so as to enable us to ascertain whether it is yet due. The relief, therefore, which the plaintiffs obtained at Special Term was not germane to the case and should be modified, I think, in accordance with the above suggestions. As the defendant was in fault, and denied altogether the plaintiffs' title to any relief, he was perhaps rightfully subjected to the costs of the original judgment. It is true the plaintiffs might have postponed their action against Howell, until their mortgage became due, and sought the relief for which they now apply in that action. But that course would have exposed the plaintiffs to the danger of losing their lien on lot No. 4 by a sale of those premises by Howell to a *bona fide* purchaser having no knowledge of plaintiffs' claim. I incline to think, therefore, he was justified in instituting an action to restore the lien

of his mortgage and at the same time to prevent, by injunction, the transfer or incumbering of the property until such lien was re-instated, and this is a portion of the relief in fact claimed by them in the complaint in this action.

I am for a modification of the judgment in accordance with these views.